**Kimberly MITCHELL, an individual, Plaintiff,**

v.

**CONSOLIDATED FREIGHTWAYS CORPORATION OF DELAWARE, a Delaware corporation, Defendant.**

**No. 89–626–Civ–J–12.**

United States District Court,
M.D. Florida,
Jacksonville Division.

Sept. 24, 1990.

Marlene Hammock and Dennis L. Pratt, Leboeuf, Lamb, Leiby & MacRae, Jacksonville, Fla., for plaintiff.

Peter Reed Corbin and John F. Dickinson, Corbin, Dickinson & Duvall, Jacksonville, Fla., for defendant.

## ORDER CONCERNING OBJECTIONS TO MAGISTRATE'S ORDER

MELTON, District Judge.

This cause is before the Court on defendant's Objections to Magistrate's Order, filed herein on February 27, 1990. Plaintiff responded with a memorandum in opposition to the objections, filed herein on March 13, 1990. For the reasons stated herein the Court will sustain the objection on the issue of punitive damages and overrule the objection on the issue of jury trial.

At issue is the order entered February 14, 1990, denying defendant's motion to strike the punitive damages claim and the demand for jury trial. The Magistrate heard the motion pursuant to 28 U.S.C. § 636(b)(1)(A) (1988) and defendant made its timely objections to the Magistrate's order.[1] This Court can sustain those objections only if the Magistrate's order is clearly erroneous or contrary to law. *See, e.g., Robinson v. Jacksonville Shipyards, Inc.,* 118 F.R.D. 525, 526 (M.D.Fla.1988). The nature of defendant's objections confines the inquiry to alleged errors of law.

Plaintiff's cause of action relies upon Fla.Stat. § 61.1301(2)(j). In short, plaintiff alleges that defendant fired him, in violation of that section, because it was served with an income deduction order. Defendant argued before the Magistrate that punitive damages are not available under the statute. Defendant additionally argued that the statute did not give rise to a right to jury trial. The Court turns to the objections raised on each issue in turn.

## PUNITIVE DAMAGES CLAIM

Defendant objects to the Magistrate's punitive damages ruling on three grounds. First, defendant urges that its interpretation of the statute, which excludes punitive damages, is correct and the Magistrate's interpretation is erroneous. Second, defendant seeks to bar the punitive damages claim for failure to comply with Fla.Stat. § 768.72. Last, defendant argues that the cause of action raised by plaintiff lies in contract, not tort, so punitive damages are unavailable.

■ The last two arguments may be disregarded. Defendant did not present these grounds to the Magistrate. His decision should not be disturbed on the basis of arguments not presented to him. *See, e.g., Doe v. Garrett,* 903 F.2d 1455, 1463 (11th Cir.1990); *Brown v. Blue Cross Blue Shield of Ala.,* 898 F.2d 1556, 1571 n. 17 (11th Cir.1990); *Denis v. Liberty Mutual Ins. Co.,* 791 F.2d 846, 848–49 (11th Cir. 1986).

The central contention before the Court, then, is the proper construction of Fla.Stat. § 61.1301(2)(j)(2). The Magistrate found the remedy of punitive damages available because this remedy appears to be available under a different retaliatory discharge statute, Fla.Stat. § 440.205, and the Florida legislature has explicitly excluded the remedy in some statutes. The presence of a civil penalty in § 61.1301(2)(j)(1), the Magistrate opined, is less significant than these other indicia of legislative intent. In denying the motion to strike, the Magistrate added, "since no court has expressly addressed the question of whether punitive damages are recoverable under § 61.1301, the Court's denial is without prejudice so that any forthcoming cases might be considered on a later motion." Order entered February 14, 1990, at 2–3.

Defendant's appeal is not based on new authority; rather, defendant offers a critique of the Magistrate's construction of § 61.1301. Defendant proposes that the purpose of punitive damages is fully accomplished by the presence of a civil penalty in the statute. Moreover, the listing of available remedies within § 61.1301(2)(j)(2), defendant argues, excludes those remedies not listed, such as punitive damages.

The Court agrees with plaintiff that the presence of the penalty provision is not

---

**1.** The Court notes a procedural problem in defendant's motion. In *Lancer Arabians, Inc. v. Beech Aircraft Corp.,* 723 F.Supp. 1444, 1445–46 (M.D.Fla.1989), this Court held improper the use of a motion to strike to attack a punitive damages claim. The correct device is a motion to dismiss, a procedural difference that is significant precisely because it determines the scope of review of a Magistrate's order. *See id.* In the present case, however, two factors render the label of the motion irrelevant. One, the dispute is wholly legal in nature; the scope of review is not materially changed by calling it

*"de novo"* or "contrary to law." Two, plaintiff did not object to the consideration by the Magistrate of the motion to strike (as the plaintiff in *Lancer Arabians* did). Defendant would reap a windfall for its procedural misstep were the Court to wipe the slate clean on the punitive damages claim. Because the Court will sustain the objections, the motion will be properly construed as a motion to dismiss and granted in that form. The Court treats the posture of the motion as a limitation on the arguments available to defendant in its appeal.

dispositive in this instance. The civil penalty, by its plain terms, applies to an adverse personnel action taken against an employee "because of the enforcement of an income deduction order." By way of contrast, the civil action is available when an adverse personnel action occurs "because of an income deduction order." Thus it appears that the civil penalty is invoked only when an enforcement action is pending, a suggestion buttressed by the provision for payment of the penalty to the child support obligee or the enforcing agency, while a civil action is available more broadly to redress an employer's response to the imposition of an income deduction order, regardless of the status of enforcement proceedings.

■ The divisibility of the civil penalty from the civil action, however, does not settle the punitive damages issue. As the parties concede, the common law of Florida does not recognize the tort of retaliatory discharge. *See, e.g., Scott v. Otis Elevator Co.*, 524 So.2d 642, 643 (Fla.1988). Section 61.1301(2)(j)(2) created a new cause of action and stated a list of remedies: "The employee is entitled to reinstatement and all wages and benefits lost plus reasonable attorney's fees and costs incurred." Defendant urges that this listing be read as all inclusive and the Court concurs.

■ The significance of the listing of remedies may be understood better by examining other statutes. For example, Fla. Stat. § 440.205 protects employees from discharge or other retaliation "by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law." The Florida Supreme Court in *Scott* intimated that punitive damages may be available for suits brought pursuant to § 440.205. The statute does not yield this

conclusion because it has no list of available remedies. The *Scott* opinion gives rise to the inference that punitive damages are available by describing the common law tort of retaliatory discharge and the remedies available in states in which it is recognized. This construction of the statute is consistent with the general principle that an open-ended legislative choice to resort to traditional principles of tort law *implicitly* includes punitive damages, *see, e.g., Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 255, 104 S.Ct. 615, 625, 78 L.Ed.2d 443 (1984), although it should be emphasized that the actual scope of damages under the statute remains undetermined.[2] It does not suggest how to interpret the specific listing of remedies in § 61.1301(2)(j)(2).

The statute providing employment protection to jurors, however, gives some insight into the legislative significance of a list of remedies. A person dismissed from employment because of jury service is "entitled to collect not only compensatory damages, but, in addition thereto, punitive damages and reasonable attorney fees for violation of this act." Fla.Stat. § 40.271(3). The statute creates a new remedy for the wrong committed. *See, e.g., Pier 66 Co. v. Poulos*, 542 So.2d 377, 381 (Fla.Dist.Ct. App.1989); *Blangy v. State*, 481 So.2d 940, 942 (Fla.Dist.Ct.App.1985), *rev. denied*, 492 So.2d 1330 (Fla.1986). Thus, the availability of punitive damages in a cause of action to redress the retaliatory discharge of a juror required the statutory creation of such a right with an express reference to the punitive damages remedy. If punitive damages may be implied as a remedy in addition to any already enumerated in a statute, then the reference in § 40.271(3) is superfluous.

---

2. "The scope of damages permitted under ... section 440.205 ... remains an open question in Florida." *Otis Elev. Co. v. Scott*, 551 So.2d 489, 491 (Fla.Dist.Ct.App.1989) (Anstead, J., dissenting in part from denial of reh'g and certification of question). The Florida Supreme Court opinion in *Scott* reached only one issue, the applicable statute of limitation. On remand, the Fourth District Court of Appeal certified a question to the Florida Supreme Court concerning

the availability of damages for emotional distress, a question not yet answered. It is noteworthy that the Florida Supreme Court described § 440.205 as a "distinct limited statutory cause of action for retaliatory discharge in the area of workers compensation." 524 So.2d at 643. It remains to be seen whether the limited nature of the action imposes a limit on the available remedies.

Without question, a legislature can expressly supplant traditional tort law principles. *See Silkwood*, 464 U.S. at 255, 104 S.Ct. at 625. A list of specific remedies is one measure by which this goal may be achieved. The wrongful death statute illustrates this point. Indeed, the 1927 Florida wrongful death statute did not authorize punitive damages; the Florida Supreme Court held, "the language of the statute creating a new statutory action for wrongful death, affirmatively negatives the idea that punitive damages are to be considered as an incident to the damages allowed for the new statutory cause of action." *Florida E. Coast Ry. Co. v. McRoberts*, 111 Fla. 278, 149 So. 631, 635–36 (1933). This rule remained unchanged until the reform of the wrongful death statute, into which the survival statute, under which punitive damages were available, *see Atlas Properties, Inc. v. Didich*, 226 So.2d 684, 688 (Fla.1969), was merged. *See Martin v. United Security Servs., Inc.*, 314 So.2d 765, 771–72 (Fla.1975).

By analogy to the jury service anti-retaliation statute and the evolution of the wrongful death cause of action, the Court concludes that the enumeration of specific remedies in § 61.1301(2)(j)(2) constitutes an exclusion of the remedies not so listed. The absence of punitive damages from the statutory list renders that remedy unavailable.[3] *Cf. Bennett v. Southern Marine Mgmt. Co.*, 531 F.Supp. 115, 116–17 (M.D. Fla.1982) (comparing enumeration of punitive damages among remedies in Florida equal pay statute with absence of mention of that remedy in Florida Human Rights Act to conclude punitive damages are not available under latter), *cited with approval in Florida Public Util. Co. v. Large*, 493 So.2d 491, 493 (Fla.Dist.Ct.App.1986), *rev.*

*denied*, 506 So.2d 1041 (Fla.1987). Defendant's motion to strike the punitive damages claim, properly construed as a motion to dismiss, *see supra* note 1, will be granted.

## JURY TRIAL RIGHT

Defendant objects to the Magistrate's ruling on the right to a jury trial on a single ground. The parties agree that the issue is governed by federal law. The most recent statement of the relevant test holds:

> To determine whether a particular action will resolve legal rights, we examine both the nature of the issues involved and the remedy sought. "First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." The second inquiry is the more important in our analysis.

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, —— U.S. ——, 110 S.Ct. 1339, 1345, 108 L.Ed.2d 519 (1990) (quoting *Tull v. United States*, 481 U.S. 412, 417–18, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987)). Defendant's objection challenges the Magistrate's conclusion on the second inquiry, the nature of the remedy sought under § 61.1301(2)(j)(2).

The Magistrate concluded that the nature of remedy sought is legal. He concluded that backpay could be characterized as damages, a remedy at law, and that the statute gave plaintiff an entitlement to the backpay, without the exercise of discretion by a judge. The Magistrate rejected defendant's attempt to use Title VII as an analo-

---

**3.** While it is true that punitive damages have been expressly excluded as a remedy in several instances, *see, e.g.*, Fla.Stat. §§ 772.104, 812.035, 895.05, these exclusions involve civil redress for actions in which punitive damages could be expected to be otherwise available. Far greater significance should be placed on the many instances in which punitive damages are expressly opted into the remedies available for a civil action. *E.g.*, Fla.Stat. §§ 40.271(3) (retaliatory discharge for jury service); 320.838 (warranty claims on mobile homes); 495.121 (false regis-

tration of mark); 497.056 (violation of cemetery regulations); 540.09(1) (unauthorized publication of certain photographs); 686.417(4) (violations of Farm Equipment Manufacturers and Dealers Act); 713.31(2)(c) (redress for filing of fraudulent lien); 725.07(2) (discrimination in loaning money, granting credit, or providing equal pay for equal services); 760.35(2) (discriminatory housing practices); 817.41(6) (misleading advertising); 817.706(1) (violations of regulations governing credit service organizations); 934.10(1)(c) (illegal wiretapping).

gy on the ground that the civil rights statute casts backpay as a discretionary remedy.

Defendant reasserts its arguments on the analogy to Title VII. The emphasis in defendant's argument lies in its claim that backpay is restitution. Defendant additionally offers the analogy of § 11(c) of the Occupational Safety and Health Act, 29 U.S.C. § 660(c), a statute in which backpay is treated as discretionary equitable relief. Courts have refused to permit jury trials under Title VII, *see, e.g., Sullivan v. School Board of Pinellas County*, 773 F.2d 1182, 1187–88 & n. 4 (11th Cir.1985); *but see Walker v. Anderson Elec. Connectors*, 736 F.Supp. 253, 254–57 (N.D.Ala. 1990); *Walton v. Corwin Equip. Co.*, 733 F.Supp. 327, 330–39 (N.D.Ala.1990); *Beesley v. Hartford Fire Ins. Co.*, 717 F.Supp. 781, 783–84, *reconsideration denied*, 723 F.Supp. 635 (N.D.Ala.1989), and under § 11(c) of OSHA, *see, e.g., Dunlop v. Hanover Shoe Farms, Inc.*, 441 F.Supp. 385, 388, 4 O.S.H.Cas. (BNA) 1241, 1243 (M.D. Pa.1976).

The Court concurs in the Magistrate's analysis of the seventh amendment issue and rejects defendant's arguments. Shortly after the present objections were at issue, the Supreme Court decided the *Terry* case. That opinion clarifies the seventh amendment analysis. When the remedy sought is compensatory damages representing backpay and benefits, these damages are in the nature of a legal remedy unless one of the narrow, well-defined exceptions applies. *See Terry*, 110 S.Ct. at 1347–48. First, "damages are equitable where they are restitutionary, such as in 'action(s) for disgorgement of improper profits.' ... Second, a monetary award 'incidental to or intertwined with injunctive relief' may be equitable." *Id.* at 1348 (quoting *Tull*, 481 U.S. at 424, 107 S.Ct. at 1839).

Defendant urges placement of plaintiff's cause of action within the terms of the first exception. The analogies to Title VII and to § 11(c) of OSHA are proposed. Both of these statutes identify backpay as a form of discretionary equitable relief, however, and this designation distinguishes the treatment of these causes of action from ones which are purely legal for seventh amendment purposes.[4] *Id.* at 1348–49;

---

**4.** The notion that backpay is a restitutionary benefit if received from the employer who violated a protective labor statute has received passing endorsement. *See, e.g., Terry*, 110 S.Ct. at 1349 (Title VII backpay "would be generally restitutionary in nature"); *Curtis v. Loether*, 415 U.S. 189, 197 (1974) (same). This reference should be understood in its context. In each case the Supreme Court has disclaimed any decision of the question whether Title VII cases are entitled to a jury trial under the seventh amendment. *See Terry*, 110 S.Ct. at 1348–49; *Lytle v. Household Mfg., Inc.*, — U.S. —, 110 S.Ct. 1331, 1335 n. 1, 108 L.Ed.2d 504 (1990). The description of Title VII relief as restitutionary is tied in these cases to the discretionary nature of the remedy. Interestingly, the Chief Justice once distinguished Title VII backpay awards from legal remedies solely on the basis of the judge's statutory discretion, a distinction that led him to conclude that removal of that discretion (as in the statute now at issue) would transform backpay into a legal right subject to the seventh amendment. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 443, 95 S.Ct. 2362, 2385, 45 L.Ed.2d 280 (1975) (Rehnquist, J., concurring). The Chief Justice's position received a measure of endorsement by the full Court in *Granfinanciera*, 109 S.Ct. at 2794 n. 7.

A line of cases in the Eleventh Circuit and its predecessor also liberally describe any backpay remedy as restitution for which the seventh amendment is not applicable. *See, e.g., Sullivan*, 773 F.2d at 1187 ("reinstatement, backpay and reimbursement for 'other lost professional benefits' ... are equitable whether sought under Title VII or section 1983"); *Whiting v. Jackson State Univ.*, 616 F.2d 116, 122 n. 3 (5th Cir. 1980); *Harkless v. Sweeny Indep. School Dist.*, 427 F.2d 319, 324 (5th Cir.1970) ("Back pay is merely an element of the equitable remedy of reinstatement."), *cert. denied*, 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971). The basis for these cases, however, is hoary precedent that precedes *Tull, Granfinanciera*, and *Terry*. The conclusion expressed in those cases has not been subjected to the contemporary seventh amendment analysis. A measure of the significance of this failing is evident in the latest of the Supreme Court cases, all of which reached a conclusion regarding the seventh amendment contrary to prior precedent in the Eleventh Circuit. *See M.C.C. of Fla., Inc. v. United States*, 481 U.S. 1034, 107 S.Ct. 1968, 95 L.Ed.2d 809 (1987), *vacating and remanding* 772 F.2d 1501, 1506–07 (11th Cir.1985) (in light of *Tull*); *Granfinanciera, supra, rev'g sub nom. In re Chase & Sanborn Corp.*, 835 F.2d 1341, 1348–50 (11th Cir.1988); *Terry, supra*, 110 S.Ct. at 1344 n. 2 (noting split among circuit courts, of which only *Leach v. Pan American World Airways*, 842

*Granfinanciera, S.A. v. Nordberg,* — U.S. —, 109 S.Ct. 2782, 2794 n. 7, 106 L.Ed.2d 26 (1989).

A better analogy for § 61.1301(2)(j)(2) lies in the federal statute providing protection to federal court jurors from retaliation in their employment in response to jury service, 28 U.S.C. § 1875. The statute declares an employer "shall be liable for damages for any loss of wages or other benefits suffered by an employee by reason" of the employer's violation of the statute. *Id.* § 1875(b)(1). The statute also provides for an award of attorney fees and costs, *id.* § 1875(d)(2), and for equitable relief such as reinstatement, *id.* § 1875(b)(2). These provisions compare favorably to the language of the present cause of action, which

confers an entitlement "to reinstatement and all wages and benefits lost plus attorney's fees and costs incurred." Fla.Stat. § 61.1301(2)(j)(2).

Several courts have concluded that the seventh amendment requires a jury trial of actions brought pursuant to 28 U.S.C. § 1875. *See, e.g., Juror 157 v. Corporate Defendant,* 710 F.Supp. 324, 327–28 (M.D. Fla.1989) (Black, J.); *Hill v. Winn–Dixie Stores, Inc.,* No. 88–91–Civ–T–13(A), 1988 WL 151723 (M.D.Fla., Oct. 12, 1988) (Carr, J.); *Carter v. Citibank,* 649 F.Supp. 19, 21–22 (E.D.N.Y.1986). In *Juror 157,* the court found an analogy to the pre-merger cause of action special assumpsit.[5] *See* 710 F.Supp. at 328. In *Carter,* the court identified the mandatory nature of the wages

---

F.2d 285 (11th Cir.1988), reached conclusion contrary to the Supreme Court). A thorough critique of this precedent by Judge Acker appears in his opinions in *Walker, Walton* and *Beesley,* cited in the text above. (The Court expresses no opinion on Judge Acker's ultimate conclusion regarding jury trials under Title VII. The present critique is undertaken to confine the Eleventh Circuit precedent to the statutes which it currently applies.)

The notion that a suit for lost wages is *per se* one for equitable relief cannot be squared with many cases in which backpay has been defined as a legal remedy. The predecessor to the Eleventh Circuit held that a suit for lost wages under the Fair Labor Standards Act carries a seventh amendment jury right. *See Wirtz v. Jones,* 340 F.2d 901, 904 (5th Cir.1965); *Lewis v. Times Publishing Co.,* 185 F.2d 457 (5th Cir.1950); *accord Marshall v. Morse Operations, Inc.,* 514 F.Supp. 604, 606 (S.D.Fla.1981). *Wirtz v. Jones* is still applied as binding precedent in this circuit. See *EEOC v. Chrysler Corp.,* 759 F.2d 1523, 1525 (11th Cir.1985). A related statute modeled on FLSA, the Age Discrimination in Employment Act, carries a right to trial by jury; lost wages appear to be treated as a legal remedy by the Supreme Court in *Lorilard v. Pons,* 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978). Cases such as *Sullivan, Whiting,* and *Harkless* cannot stand for the blanket proposition that lost wages always are an equitable remedy, for this proposition runs afoul of prior binding circuit precedent, see *United States v. Andrews,* 850 F.2d 1557, 1561 n. 13 (11th Cir. 1988) (*en banc*) (only *en banc* court can overrule precedent from predecessor circuit), and Supreme Court precedent. The Court accordingly construes the named cases narrowly.

A close look at the restitution concept, moreover, demonstrates that it does not apply to this suit for lost wages and benefits. The substantive basis of restitution is unjust enrichment, a

benefit conferred on a party which it is unjust for that party to retain. *See* RESTATEMENT OF RESTITUTION § 1 (1937); RESTATEMENT (SECOND) OF RESTITUTION § 1 (Tent. Draft No. 1 1983). The "benefit" conferred on defendant by its discharge of plaintiff, if any, lies in any savings it realizes from hiring another person in plaintiff's place. This "benefit" is not measured by the cost of plaintiff's lost wages and benefits. Thus the damages sought by plaintiff are not the disgorgement of improper profits or some other form of unjust enrichment; plaintiff's cause of action is properly viewed as a claim for compensatory damages measured by the amount of his lost wages and benefits, a legal claim. *See Terry,* 110 S.Ct. at 1348. The cases concerning the federal juror employment protection statute, discussed *infra,* confirm this proposition.

5. The analysis involved in this analogy likewise applies to the present cause of action. "Under the special assumpsit analogy, it is necessary to imply that the terms of the statute ... are incorporated into an employment contract." *Juror 157,* 710 F.Supp. at 328. This poses no difficulty in this case because "[t]he laws in force at the time of the making of a contract enter into and form a part of the contract as if they were expressly incorporated into it." *Florida Beverage Corp. v. Division of Alcoholic Beverages & Tobacco,* 503 So.2d 396, 398 (Fla.Dist.Ct.App.), *rev. denied,* 511 So.2d 998 (Fla.1987); *see National Distrib. Co. v. James B. Beam Distilling Co.,* 845 F.2d 307, 309 (11th Cir.1988); *Department of Ins. v. Teachers Ins. Co.,* 404 So.2d 735, 741 (Fla.1981) ("It is fundamental that the laws of Florida are a part of every Florida contract."). Accordingly, the first part of the seventh amendment analysis favors the jury demand in this case, but this determination is only preliminary. *See Terry,* 110 S.Ct. at 1347; *Granfinanciera,* 109 S.Ct. at 2793.

and benefits damages as the key feature for determining that the remedy was legal, not equitable.[6]  *See* 649 F.Supp. at 22.

The strength of the reasoning of these cases and the strength of the analogy of 28 U.S.C. § 1875 to the present statute give confidence to the conclusion that the Magistrate correctly denied the motion to strike the jury demand.  The Court will overrule the objection to that portion of the Magistrate's order.  Accordingly, it is

ORDERED AND ADJUDGED:

1.  That defendant's objections to the Magistrate's order are sustained in part and overruled in part;

2.  That defendant's motion to strike as it pertains to the claim for punitive damages, properly construed as a motion to dismiss the claim for punitive damages, is hereby granted as construed;

3.  That plaintiff's claim for punitive damages is hereby dismissed;

4.  That defendant's objection to the Magistrate's order concerning the motion to strike as it pertains to the jury demand is hereby overruled and this cause shall proceed to trial, as scheduled, before a jury.

DONE AND ORDERED.

---

6.  The *Juror 157* court relied upon the nature of the remedy for the common law analogies to the statute.  *See* 710 F.Supp. at 328.  The *Terry* Court subsequently disapproved of this methodology as a conflation of the two parts of the seventh amendment inquiry.  *See* 110 S.Ct. at 1348 n. 8.  The *Carter* court's analysis, by contrast, follows the appropriate methodology as described in *Terry* and *Granfinanciera*.